Minute Order Form (06/97)

JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7777 | **DATE** | 10/29/2001 |
| **CASE TITLE** | USA ex rel. Karla Jones vs. Glenda Blakemore | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's petition for writ of habeas corpus is denied. The above cause is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 29 2001 date docketed | |
| | Notified counsel by telephone. | | | 19 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 10/29/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| | ETV | courtroom deputy's initials | 01 OCT 29 PM 3:41 | ETV |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. KARLA JONES | ) ) ) | **DOCKETED**<br>OCT 2 9 2001 |
| Petitioner, | ) ) | No. 99 C 7777 |
| v. | ) ) | Hon. Rebecca R. Pallmeyer |
| GLENDA BLAKEMORE, | ) ) ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

On August 21, 1979, Herman Kuntz was found stabbed to death in his home, from which a safe had been taken. Some fourteen years later, on February 23, 1993, while in police custody on an unrelated arrest, Petitioner Karla Jones admitted that she and Dontalyon Jimerson had gone to Kuntz's house so that Jimerson could remove valuables from the house while Jones kept Kuntz busy upstairs. Kuntz apparently heard a noise downstairs, and when he went to check it out, Jimerson stabbed him. Jones and Jimerson then left the house, returning a short while later to take a safe from an upstairs closet. Following a jury trial in the circuit court of Will County, Petitioner, Karla Jones, was convicted on February 14, 1994 of one count of first degree murder. The trial court sentenced Petitioner to 40 years' in prison. The Illinois Appellate Court affirmed Petitioner's conviction and sentence on February 8, 1996; Petitioner did not petition for leave to appeal this decision to the Illinois Supreme Court. Petitioner filed a petition for post-conviction relief on July 31, 1996, which the trial court dismissed as frivolous and without merit. The Illinois Appellate Court

affirmed the trial court's decision, and the Illinois Supreme Court denied petitioner leave to appeal on December 2, 1998. Now in the custody of Respondent Glenda Blakemore, Warden of Dwight Female Correctional Center, Petitioner brings this federal habeas corpus petition pursuant to 28 U.S.C. 2254, raising five claims. As discussed below, four of Petitioner's five claims are procedurally defaulted, and the only claim to survive procedural scrutiny has no merit. Thus, her petition for writ of habeas corpus is denied.

## PROCEDURAL HISTORY

On October 5, 1995, Petitioner appealed her conviction to the Illinois Appellate Court raising two arguments. Petitioner argued, first, that the indictment should have been dismissed because the fourteen-year delay between the alleged commission of the offense and the filing of the indictment violated her due process rights. Second, Petitioner argued that her 40-year sentence was an abuse of the trial court's discretion because that sentence was greater than the 36-year sentence imposed on her co-defendant, Donatalyon Jimerson, who actually killed the victim. (Ex. C, Answer to Petition for Writ of Habeas Corpus (hereinafter "Answer to Petition"), *People v. Jones*, No. 93-CF-3047, Ill. App. Ct., 3rd Dist., Feb. 8, 1996 at 1.) The Appellate Court affirmed Petitioner's conviction and sentence on February 8, 1996, noting, *inter alia*, that Petitioner had a more extensive criminal history than her co-defendant,

warranting a longer sentence. (*Id.*) Petitioner did not file a petition for leave to appeal to the Illinois Supreme Court. (Answer to Petition ¶ 4.)

On July 25, 1996, Petitioner, acting pro se, filed a petition for post-conviction relief, claiming that she had been denied the effective assistance of trial counsel. (Ex. F, Answer to Petition, *People v. Jones*, No. 93-CF-3047, Ill. App. Ct., 3rd. Dist.., July 15, 1998 at 1.) Specifically, Petitioner charged that her trial counsel had been ineffective for failure to investigate and produce evidence that would prove her innocence. (*Id.* at 2.) Petitioner argued that her counsel should have emphasized the following facts: (1) the hair found in a barrette at the victim's home did not belong to Petitioner; (2) Petitioner did not a make a certain statement attributed to her by police;[1] and (3) Petitioner did not sign the form acknowledging that she had been read the *Miranda* warnings. (*Id.*) Petitioner further claimed that her counsel was ineffective for allegedly raising her criminal history at trial before the jury.[2] (*Id.*) The trial court dismissed Petitioner's post-conviction petition as frivolous and patently without merit on September 16, 1996. (*Id.* at 1.) Petitioner appealed the dismissal to

---

[1] Although the record is not entirely clear as to which statement Petitioner is referring, she may have been referring to the statement she made to police on February 23, 1993 about her involvement in the Kuntz murder.

[2] To accept Petitioner's assertion that her attorney raised her criminal history before the jury requires quite a leap. The record shows that her attorney asked the investigating officer about his questioning of Petitioner, and that during his testimony, the officer testified that another officer had informed him that Petitioner was in custody. No one mentioned that she was in custody on a separate charge and no reference to her criminal history was made. Petitioner relies entirely on the inference that could be made from the fact that she was in custody at the time she confessed.

the Illinois Appellate Court, arguing, in essence, that the trial court abused its discretion by dismissing her petition. (*Id.* at 3.) On July 15, 1998, the Appellate Court affirmed the trial court's decision. (*Id.* at 1.)

On September 1, 1998, Jones petitioned for leave to appeal to the Illinois Supreme Court. (Ex. G, Answer to Petition, Petition for Leave to Appeal.) In this submission, Petitioner raised four arguments: (1) trial counsel was ineffective for failing to investigate all relevant facts and failing to interview, question, or subpoena certain witnesses; (2) trial counsel allowed introduction of hearsay evidence;[3] (3) trial counsel failed to require proof that Petitioner had received *Miranda* warnings; and (4) trial counsel failed to represent Petitioner's best interests "by dooming [Petitioner's] defense to failure." (*Id.* at 3.) The Illinois Supreme Court denied the petition for leave to appeal on December 2, 1998. (Ex. H, Answer to Petition, Notice that Supreme Court Denied Petition for Leave to Appeal.)

On November 30, 1999, Petitioner filed her Petition for Writ of Habeas Corpus raising five claims. (Petition for Writ of Habeas Corpus (hereinafter, "Petition") at 5-6.) In the first three of her five habeas claims, Petitioner asserts that newly discovered evidence of forged documents and false testimony shows violations of her Fourth, Fifth, and Fourteenth amendment rights. (*Id.*) Petitioner specifically alleges that her signature was forged on two *Miranda* rights forms purporting to acknowledge that she was read her *Miranda* rights. (*Id.*) Petitioner's fourth claim is that her trial counsel's

---

[3] Petitioner argues that her attorney should have objected to the investigating officer's testimony about statements he received from three witnesses.

failure to investigate and challenge the authenticity of the allegedly forged documents amounted to ineffective assistance of counsel. (*Id.*) Finally, Petitioner claimed that her trial counsel's strategy amounted to ineffective assistance of counsel. (*Id.*) For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus is denied.

## DISCUSSION

### I. Procedural Default

#### A. Standard of Review

Pursuant to §§ 2254 of the Anti-Terrorism and Effective Death Penalty Act, a prisoner is entitled to a writ of habeas corpus if she is being held under a state court judgment obtained in violation of the Constitution. 28 U.S.C. §§ 2254; *Williams v. Taylor*, 529 U.S. 362 (2000). A federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings only if the state decision: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1) & (2); *Boss v. Pierce*, 263 F.3d 734, 738 (7th Cir. 2001); *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). This court will not reach the merits of a habeas corpus petition, however, unless Petitioner can show that she has exhausted her state remedies and avoided procedural default. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000); *Moleterno v. Nelson*, 114 F.3d 629, 633-34 (7th Cir. 1997).

## B. Exhaustion and Procedural Default

Habeas relief is only available to a Petitioner who has exhausted her claims in state court. 28 U.S.C. § 2254. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Under Section 2254(c), a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if [s]he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In *O'Sullivan*, the Supreme Court explained that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Illinois, "one complete round" is finished once the Petitioner has presented the habeas claims, whether on direct appeal or on post-conviction appeal, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See id.* at 847-48.

It is patently clear that Petitioner procedurally defaulted on the first three, as well as the fifth, of her habeas claims. The only claims Petitioner pursued through a complete round of the appellate process were the claims she raised on appeal from the denial of her post-conviction petition, all of which addressed her trial counsel's alleged ineffectiveness with respect to the alleged forged documents. Petitioner's first three habeas claims, however, allege that newly discovered evidence of false testimony and forged documents shows that her constitutional rights were violated. Not only did

these claims not make it through one full round of either the direct or post-conviction appellate process, Petitioner did not raise these claims at any point prior to her habeas petition. Her fifth habeas claim does invoke ineffective assistance, because she charges there that her trial counsel's overall strategy was ineffective. Because she did not raise an "overall strategy" argument in any previous proceeding, however, this fifth claim is also defaulted.

Where a petitioner's claims are procedurally defaulted, the court may consider the merits of the claims only if Petitioner can " ' demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.' " *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000), *quoting Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner attempts to demonstrate cause for the defaults by arguing that she "was not able to prove newly discovered evidence, forged document and false testimony until she was in possession of rights form . . . [she] received these rights forms on 1-17-99 and 2-25-99." (Petition.) The court notes, however, that Petitioner did not even request these documents until December 17, 1998. (*Id.*) Particularly where Petitioner emphasizes the fact that she has denied signing the *Miranda* form since prior to her trial in 1994, the court finds no reason, nor does Petitioner suggest any reason, to excuse Petitioner for allowing years to elapse prior to pursuing evidence relevant to this issue.

Similarly, the court finds that there is no danger that a fundamental miscarriage of justice might ensue should the court refuse to address Petitioner's

procedurally defaulted constitutional claims. As the Seventh Circuit has recognized, the controlling case in this context is the Supreme Court's decision in *Schlup v. Delo*, 513 U.S. 298 (1995). *See U.S. ex rel. Bell v. Pierson*, No. 00-4296, ___ F.3d ___, 2001 WL 1029282, at *5 (7th Cir. Sept. 10, 2001). *Schlup* explains that, for Petitioner to show that her case fits into the "narrow class of cases" that implicate a fundamental miscarriage of justice, she must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 315, 327; see *Bell*, 2001 WL 1029282, at *5. Only if Petitioner can show that "it is more likely than not that no reasonable juror would have convicted h[er] in light of the new evidence" will her constitutional claims be evaluated. *Schlup*, 513 U.S. at 327.

Petitioner here offers new evidence that the signature attributed to her on two *Miranda* rights forms were in fact forged and that the times recorded on the forms were inconsistent. (Petition.) Petitioner further alleges the testimony given relating to her signing the *Miranda* forms was false. (*Id.*) This new evidence does not, however, constitute evidence of actual innocence; whether or not Petitioner signed the *Miranda* warning forms has nothing to do with whether or not she perpetrated the crime as charged. Moreover, the evidence falls far short of a showing that "it is more likely than not that no reasonable juror would have convicted her in light of the new evidence." *Schlup*, 513 U.S. at 327. Therefore, because nothing in the record suggests that there was cause for the defaults and prejudice, or that a fundamental miscarriage of justice would occur if her claims are not considered on the merits, the court cannot

look past the procedural default of Petitioner's first, second, third, and fifth habeas claims to their respective merits.

Petitioner's fourth habeas claim, that her trial counsel's failure to investigate and challenge the authenticity of the allegedly forged documents amounted to ineffective assistance of counsel, was not procedurally defaulted. In her post-conviction petition, Petitioner argued that trial counsel had been ineffective for his alleged failure to investigate and argue the fact that she had not signed the form acknowledging that she had been read her *Miranda* rights. The Illinois Appellate Court considered whether the trial court had abused its discretion in dismissing Petitioner's post-conviction petition, and then, in her petition for leave to appeal to the Illinois Supreme Court, Petitioner argued that trial counsel was ineffective for failing to require proof that Petitioner had been read her *Miranda* rights. Finally, in her habeas petition, Petitioner charges that her trial counsel's failure to investigate and challenge the authenticity of certain allegedly forged documents, one of which was the form acknowledging that she had been read her *Miranda* rights, constitutes ineffective assistance of counsel. Although her claims were framed slightly differently at each step along the way, the differences constitute "mere variations in the same claim" that do not foreclose exhaustion of the issues in the state court. *Momient-El v. DeTella*, 118 F.3d 535, 539 (7th Cir. 1997), *citing Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980). Petitioner successfully called into question her trial counsel's failure to pursue whether or not she had signed the *Miranda* rights form, as the prosecution claimed, through

"one complete round" as is required to avoid procedural default. *O'Sullivan,* 526 U.S. at 845.

II. Merits

   A. Standard of Review

A stringent standard of review awaits those claims that survive the procedural prerequisites. Under § 2254, a federal district court must deny habeas review for any claim the state court addresses on the merits unless that state decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The "contrary to" provision refers to questions of law, and on such questions, a federal court makes a *de novo* review. *See Lindh v. Murphy,* 96 F.3d 856, 869 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320 (1997). The "unreasonable application" exception pertains to mixed questions of law and fact. *Id.* at 870. A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case," or "if it is one of several equally plausible outcomes." *Boss,* 263 F.3d at 742, *quoting Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir. 1997), and *Hall v. Washington,* 106 F.3d 742, 749 (7th Cir. 1997). For purposes of habeas review, the state court's factual findings are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1).

-10-

Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

B.  **Ineffective Assistance of Trial Counsel**

Petitioner will only succeed in showing ineffective assistance of counsel if she can show that: (1) her counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense to the degree that it deprived the defendant of a fair trial, that is a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner also "must identify the specific acts or omissions of counsel that form the basis for h[er] claim of ineffective assistance." *Momient-El*, 118 F.3d at 541. This court will defer to the state court's application of the law to the extent that "only a clear error in applying *Strickland* 's standard would support a writ of habeas corpus." *Dixon v. Snyder*, ___ F.3d ___, 2001 WL 1117462, at *6 (7th Cir. Sept. 20, 2001), *quoting Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). *Strickland's* standard is highly deferential to counsel, "presuming reasonable judgment and declining to second guess strategic choices." *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001).

To determine whether Petitioner has shown the first prong of the *Strickland* test, the performance prong, the court will "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela*, 261 F.3d at 698-99, *quoting United States*

-11-

*v. Lindsay*, 157 F.3d 532, 535 (7th Cir.1998). Turning to the second *Strickland* prong, the prejudice prong, Petitioner must "be able to demonstrate that the complained of deficiency resulted in . . . [a] 'reasonable probability' that in the absence of error the result of the proceedings would have been different, and [that the proceeding] was fundamentally unfair or unreliable." *Valenzuela*, 262 F.3d at 699; *Williams v. Washington*, 59 F.3d 673, 682 (7th Cir.1995), *quoting Strickland*, 466 U.S. at 694.

Petitioner argues that she was denied the effective assistance of trial counsel because counsel allegedly failed to investigate and challenge the authenticity of two documents that the prosecution claimed at trial Petitioner had previously signed. In each of these documents, Petitioner purportedly acknowledged that she had been read her *Miranda* rights. The Illinois Appellate Court examined this issue and determined that, with respect to Petitioner's "contention that the signature on the *Miranda* warning form was forged," counsel's decision not to challenge it "rested on an evaluation of whether such a denial would be credible." (Ex. F, Answer to Petition, *People v. Jones*, No. 93-CF-3047, Ill. App. Ct., 3rd Dist., July 15, 1998, at 5.) The Appellate Court explained that "[t]hese are precisely the kind of strategic decisions which are sheltered from any claim of ineffective assistance of counsel." (*Id.*) Petitioner does not identify, nor does this court find, any basis upon which to hold that the state court's ruling in this instance was clear error.

Petitioner emphasized that if trial counsel would have pointed out the allegedly forged document, the credibility of the prosecution's primary witness would have been

called into question. (Petition.) The court notes, however, that counsel's decision not to attack the authenticity of the signature on the *Miranda* form was essentially a strategic decision. As the *Strickland* Court said, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690. Though Petitioner identified what she saw to be the benefits of challenging the authenticity of the signature on the *Miranda* form, she made no showing that counsel's decision not to so challenge the signature was unreasonable; Petitioner failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, Petitioner offered neither evidence, nor arguments, to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In short, nothing about the state court's Strickland analysis was unreasonable or inconsistent with Federal law. Petitioner's petition for writ of habeas corpus is denied.

ENTER:

Dated: October 29, 2001

REBECCA R. PALLMEYER
United States District Judge